which is Concerned Citizens v. EPA. It is case number 18-9542. Council, you may proceed. Thank you, Your Honor. My name is Lindsay Lovejoy. I'm representing Concerned Citizens for Nuclear Safety. And as the Court said, the case concerns EPA's refusal to terminate a Clean Water Act permit for a facility that is not discharging anything, has discharged nothing for eight years, going on nine, and has no plan to discharge anything. Now that you've said that, doesn't that on its face present a jurisdictional problem on standing? It seems to me like your standing is all derivative from a different statute. Well, the standing represented by the individuals who filed affidavits with the Court relates to the fact that the Clean Water Act permit, by regulation and by statute, confers an exemption from the Resource Conservation and Recovery Act. And these folks are injured by, or threatened with injury by virtue of the fact that the facility is close upstream from lands where they frequent and in some cases occupy, and they are exposed to releases from the facility. But isn't that such a remote possibility? I mean, in my memory, I can't recite verse and phrase the cases, but Wuhan, etc., says that the injury must be imminent, direct. How is this, this injury seems maybe only potential or speculative? Well, it's certainly not speculative, Your Honor, because contaminants have already been identified in springs that bring groundwater from Los Alamos down to the Rio Grande. There are various facilities... But not as a result of this permit. Well, we don't know that. We really don't know. No, we do. It's undisputed. There's been no discharges. There have been discharges in the past, and they have made their way to the Rio Grande. But, counsel, your theory of the case is to allege that there's no discharge. So if there's, trying to, Judge Murphy, trying to match up your allegation of no discharge on the one hand, but injury on the other. There's no discharge. Where's the injury? The injury is failure to enforce RCRA. It's a procedural violation. RCRA does not apply at this point. It only applies. It only does not apply because the Clean Water Act permit bars it. But, look, if the permit's in place, the facilities, or this outfall is exempt from RCRA. So how can you allege a RCRA injury when RCRA doesn't apply? Because it is wrong for the permit, the Clean Water Act permit, to be in place at all. It should have been terminated. The law requires it. Well, now that's different. It shouldn't have been in place at all. Are you arguing that it shouldn't have been issued in the first place? The question, I take it, is whether the request for termination should have been advanced in the permit renewal process. I don't think in this case that could have happened, that could have been done. And I think the other parties have asserted that. But it really wouldn't have worked. I have, if the court will bear with me, a timeline for the events of the renewal proceeding. And there's just a few of them. Is that in your brief? I don't think it's all in the brief. Well, before you go there, even if you did not prevail here, that did not mean ipso facto that there will be an injury under RCRA. You can still have another fight to oppose the RCRA permit, right? Well, there are certainly other lawsuits that can be brought, but this one... Well, you can oppose it at that time, can't you? I'm not sure at what They're home free under RCRA, right? It certainly does, Your Honor. They're exempt. Okay, so the permit here is just like a permit or whatever you need under RCRA. They're equal, they're the same thing. They certainly don't cover the same subjects. The RCRA permit is much more protective than a Clean Water Act permit. And just because you have a Clean Water Permit does not necessarily mean, it may help you, but it does not necessarily mean you're going to get the RCRA permit, right? It's a barrier to getting a RCRA permit. Okay, but with that barrier down, that does not mean that the RCRA permit is still going to be granted. The agency would have an obligation to apply a RCRA permit to this facility. Okay, so once you have this permit, you're necessarily going to get a RCRA permit, and you told me that was not so. Once we have the Clean Water Act permit, there is no RCRA permit. And a RCRA permit would cover subjects like public information about the construction of new facilities. Okay, so you are telling me that this is the equivalent of a RCRA permit. It is not the equivalent, Your Honor. We're kind of going around in circles. I've got another jurisdictional question to ask you. I'm not understanding why there's statutory jurisdiction here under 1369B1F, you know the provision I'm talking about. Yes, Your Honor. It provides for our court to have jurisdiction to hear challenges to an EPA action in issuing or denying any permit under the other provision of the statute, but there was no issuance or denial of a permit here. Well, Your Honor. You requested that the permit that had already been issued be terminated, and EPA said no. I just don't see how that squares with the language of that statute. The EAB, the Environmental Appeals Board, can take different actions when a matter is brought before it, but this situation pretty much directly requested them to direct that the permit be terminated, and then they would issue a notice of intent to terminate the permit, which goes through the permitting process like any other permit. It says issuing or denying a permit. That's different from terminating an existing permit. The process laid out in 40 CFR 124.5 is that in certain circumstances, which are applicable here, the Environmental Appeals Board directs the issuance of a notice of intent to terminate, which the rule says is a form of permit. They refuse to do that. You got any authority for I'm sorry, we have not found cases under that rule. Well, you cited, the parties have cited a Supreme Court case. Yes. Okay, is that your best case? That is the best one. It says the equivalent. But is it applicable? I mean, there, the EPA vetoed a state-issued, or at least vetoed a part of a state agency-issued EPA permit. That sounds a lot more like a Well, that's a different type of action, and we have here an agency decision not to issue a notice of intent to deny, which the agency says is a form of permit. Now, I don't want to take too much of your time. Can you give me the regulation site on that? 40 CFR Why do you have stating in this case? The individuals who are part of CCNS and who have filed affidavits here are exposed to contamination from a facility which operates without a RCRA permit and is dangerous by definition because of that, and there are specific areas that they've used and they're now reluctant to use and enjoy because of the lack of RCRA permitting for this facility. The failure of the RCRA process is a procedural violation. They don't need to show immediate injury, but they are under threat. They are certainly under threat, and the areas they frequent are under threat of RCRA violations. We've had significant new facilities built as part of the RLWTF without any public process. Some of the pipes and connections are without the double containment that RCRA would require. There is significant exposure. There are violations of RCRA up and down that facility. People have talked about how it needs to be under RCRA. For many years, it's still not. Thank you. Thank you. The decision here is predicated on an action by the Environmental Appeals Board, which read the rule about when termination is called for under the Clean Water Act, and in response to our request, they added conditions, which are not in the statute, not in the rule, which tracks the statute, and were completely unexpected and unauthorized. Are you talking about the timing issue here, where the changes occurred before or after the permit issue? Is that what you're referring to? This is what they added, yes, Your Honor. All right. Let me just ask you, though, what changes, what material changes happened? Why are we here? Why did you ask for the termination based on change of conditions? What's the basis for that? The facility underwent 100% reconstruction, as announced in the NEPA documentation about it. The process of adopting zero liquid discharge as its principle of operation started back in the 1990s. The facility, in the mid-90s, added a mechanical evaporator, which effectively boiled off the water content of waste that would be discharged. At first, it didn't treat all of the output. At one point, they adopted a mechanical evaporator that treated the entire output. And then, in late 2012, they built a series of evaporation ponds, which probably operate a lot more efficiently and will evaporate the water content entirely. So these are major constructions. Those are the solar evaporators? Solar ponds, yes. Are those in use now? I don't believe they're in use. Well, then how can that be a change if they're not in use? Well, how can it, Your Honor? Indeed. But the Environmental Appeals Board... Well, how can it? It can't. But the Environmental Appeals Board... Well, I don't know. Well, if it isn't a change, you're arguing that the change justifies your request for termination. Yes. And then you're telling me that the solar evaporation ponds are one of the changes, but if they aren't in operation, there hasn't been a change. Well, Your Honor, some people might agree with that principle, and some people might say that when they're constructed, that's a change. And some people might say that when the plan to build them is announced, that's a change. That's what the EAB said. So what do you say? We say that it's not critical to identify the time of one of these major construction projects. It's really arbitrary to say what the date is. The requirement of a change is only in the rule one logically... Well, counsel, some people would say that in spite of all the things you just talked about, the outfall pipe is still needed as a backup, and there has been no material change. Are you saying that the outfall pipe is no longer needed as a backup? Actually, it's not needed as a backup because there is plenty of reserve capacity in those evaporation tanks and in storage tanks. But your challenge is to the permit that allowed discharge from that backup pipe. Now, is it needed or is it not needed? It's not needed, Your Honor. If it's not needed, then where's your standing? You keep saying, well, maybe there will be discharge. We don't know. But on the other hand, you're saying it's not needed. And if there's no discharge, absolutely no chance of a discharge, and that's the focus of your claim, where's your standing? The standing is on failure to enforce RCRA, which is the automatic and statutory... This isn't a RCRA case, even. You're challenging the permit under the Clean Water Act. With the permit in place, RCRA doesn't apply. And you keep coming back to RCRA as the basis for your standing injury. Is that the only basis for your standing injury? Failure to regulate this facility... I'm asking, is that the only basis? Yes, that is our standing basis. All right. So, I'll save a few minutes for rebuttal, if that's all right. Thank you, counsel. Good morning, and may it please the Court. My name is Sue Chen, and I represent the United States. With me today are Don Messier and Renee Ryland from EPA, and Silas DeRoma from the Department of Energy. The United States Intriate would split our time 9 and 6. I, of course, answer as many questions as you need me to, but our general goal is 9 and 6. This Court has no jurisdiction over the petition because citizens have no standing. I'll explain why they have neither substantive nor procedural standing, and then I'll address your question, Judge Matheson, about 13691F. And finally, I'll clarify the scope of the lab's report permit. First, citizens have no substantive standing. Judge Murphy, you're right, that their theory of injury hasn't satisfied the requirement that a future injury be certainly impending as required by the Supreme Court under Clapper v. Amnesty International. I'll also add that they haven't tied their alleged injury to EPA's action. The only part of the lab they say got an exemption on account of the permit is the radioactive liquid waste treatment facility. But physically, that facility is only a small part of the lab. If you look at AR-15, it shows a map of the lab and its different technical areas. The treatment facility is on Technical Area 50, which is in the northwest quadrant just south of the main road, and it's tiny. Citizens haven't specified whether any impending release would be coming from the treatment facility or somewhere else at the lab that has nothing to do with this lawsuit. Second, they can't rely on procedural standing here. This case is not about procedure. They have raised no procedural claim, and so... There are multiple outfalls, correct? The permit covers 11 outfalls total, and there are 10 of them that are not disputed, and they can discharge... Okay, so the only outfall we're concerned about is 051. Correct. If it is determined that... If the other side prevails on this, then the eradication of the permit is only as to that outfall, correct? Yes. And they still have a permit? The lab would still have a permit, yes. So they're still home free on RCRA, is that correct? No, because it is outfall 051's coverage that gives the basis for the state's exemption. Okay. Yeah. All right. But... So there is alignment that way, and that is the 051 outfall is the end all or be all to RCRA? To the state's RCRA exemption. That is the basis for that exemption, yes. But again, there is... This is... They can assert a procedural standing argument, which they've tried to argue, because this is not a procedural case. I mean, really, at the end of the day, they're legal... They're arguing procedural injury, though. Well, that's not the kind of procedural injury this court typically recognizes. A procedural injury is one that arises not from the agency's decision, but from its uninformed decision making. And here, there's no claim that EPA skipped some procedure required by the Clean Water Act, so its denial is not uninformed and can't give rise to a procedural injury. And this court, in the wild earth opinion cited on page seven of the reply, talks about this concept. At the end of the day here, citizens' real goal is to get you to override the state's exemption regulation. They don't like the fact that the state is exempting the treatment facility based on permit status, and they want you to change that outcome. You have no authority to do that, not when the only action being challenged is EPA's denial under the Clean Water Act. Counsel, when you say no authority, it stems from your standing argument, correct? Is that why we don't have authorities that... Correct. We think you do have jurisdiction under 1361F, because... ...that were submitted by concerned citizens with their brief? Sure. Their declarations don't provide any specific facts of any current injury or any certainly impending future injury. Mr. Sanchez, at paragraph 15 of his declaration, says he's not certain of any current releases. Ms. Lorenz's last testing trip was back in 2007, so she doesn't have any information about current injury. On future injury, the best that Ms. Lorenz can say is on paragraph 16, where she says that the lab is, quote, positioned to release contaminants. That's very different from saying it's certainly going to release. So we don't think their declarations satisfy their burden to show standing. So, counsel, can you help me understand? I guess you're suggesting that the only procedural injury is some sort of uninformed decision-making? Is that how you draw the line? Yes. Help me understand why the line has to be there. I think it goes to... you also have to look at the rest of the procedural standing inquiry, which is, if the problem is that the agency skipped a procedure, which they say, then the agency makes this uninformed decision-making. Well, here, even if you make the lab go through the state hazardous waste process, that's not going to better inform EPA's decision on the denial, because the state's RCRA process is not a consideration under the termination regulation. And so that's why their procedural standing case just completely falls apart. Judge Matheson, in response to your question about 1369 1F, Crown Simpson says, jurisdiction under 1F turns on the function similarity to an issuance or denial of permit. Here, EPA's denial of the termination request left the permit in place. It left its issuance intact. Now, it's not identical to an issuance or a denial of permit, but we think it's functionally similar enough, and that's acceptable under Crown Simpson. Well, then how... neither party even mentioned last year's U.S. Supreme Court case that talked about 1369 B1F's National Association of Manufacturers versus Department of Defense. Yep. Are you familiar with the case? I am. So, does that shed any light? I mean, it was critical of Crown Simpson in this so-called functional similarity test, so... Sure. What do you say about that? The National Association of Manufacturers case involved the challenge to EPA's Waters of United's rulemaking, and the court rejected the functional approach for a nationwide rule that it said makes no decision whatsoever on individual permit applications. This is on page 62 of that opinion. The court did not reject the functional approach as it applies to individual permits like the ones here. So, we think that Crown Simpson is still good in this case. It didn't reject it, but it didn't... it wasn't very... it wasn't very positive about it. That was a very different scenario that, as the court noted, did not deal with permits, and section... No, I understand. It dealt with the regulation, the Waters of the United States regulation. That did not make any decisions about permits, and 1F specifically talks about issue and denial of a and the National Association of Manufacturers case didn't undermine Crown Simpson in that regard. Let me just take my remaining time and quickly address the scope of the state's RCRA exemption. The lab itself is not exempt under the state's RCRA program. The lab is currently operating under a RCRA cleanup order, and it has a state RCRA permit that covers its hazardous waste operations and facilities, and this permit was discussed at AR-31. The state exemption that citizens are worried about covers only the treatment facilities, wastewater treatment unit, but it does not cover leaks or releases from that unit. So, any leaks or releases at the lab, including from the treatment facility and the treatment unit, would be subject to the terms of the lab's RCRA permit and the state RCRA program. The sludge that comes out of the treatment unit would also be subject to RCRA if it contains hazardous waste. And I want to be crystal clear that the exemption does not mean that the treatment unit is somehow left totally unregulated. It's still regulated under the Atomic Energy Act. So, are you saying that they would have a RCRA problem even under the present status if sludge starts coming out of 051? Yes, that would be – that could result in RCRA enforcement action. The lab would need to clean that up. So, it's not – So, the fact that they're not in need of a RCRA permit now for outfall of 051 does not mean they're home free on oozing from 051? That is absolutely right. Any leaks or spills from that treatment unit are subject to state RCRA. And if you want to – I take it you're saying if you want to direct that to constitutional standing, then even their RCRA premise falls. That's correct. Given that the lab is covered by a RCRA permit and that the treatment facility is regulated under the Atomic Energy Act, they haven't shown that the exemption meaningfully increases any risk of release here. Unless the Court has any further questions, I will turn things over to TRIAD. Thank you. Good morning, and may it please the Court, I'm James Banks, Counsel for TRIAD National Security, which operates Los Alamos National Lab. With me this morning is Susan McMichael, Senior Environmental Counsel for TRIAD. In the very brief amount of time I have, I'd like to turn to the facts which have become muddled in this discussion this morning. Is this permit – would it be fair to call it a just-in-case permit for outfall of 051? You might term it that, and I'm going to explain to you – And you're not running away from that? No, and I will explain to you exactly why that's the case. The facts are not all that complex about this facility. There are three parts to this facility. There is the wastewater treatment facility itself, which through physical and mechanical processes treats the waste. And then the treated effluent goes to one of two places – a mechanical evaporator or outfall 051. The solar evaporation tanks are not relevant. They were built in 2011 or so, but they were never fully permitted, so they've never been used. And now they're in a state of disrepair, and all of the liners must be replaced. That's going to take at least another year. So they've never been in the picture, and they won't be in the picture to aid in case of a failure of the mechanical evaporator in the future for some time. So the mechanical evaporator was added in 2011. We're now eight years later. So for eight years, there has been no change in the condition of this facility, either before the permit was issued or after the permit was issued. The time frame is not relevant. In fact, there was a period after 2012 when Los Alamos made clear that it needed 051 of about 18 months before the comment period closed on that renewal permit, where petitioners had that information and could have objected to the permit and not resorted to a request to terminate after the fact. So what would happen tomorrow morning if the mechanical evaporator suffered a major breakdown, which is quite possible? This wastewater treatment facility process is just under a million gallons of influent per year. The usable storage in tanks at this facility is 340,000 gallons. So you have to fill the tanks before there's anything that comes out. Right. So when those tanks are full, you cannot process any more waste if 051 is not there, because the mechanical evaporator is under repair. So you would have a period of about four months to fill up those tanks, assuming that they were even empty when the mechanical evaporator broke down tomorrow morning, which is highly unlikely, but at most about four months to order the parts, get them installed, do a shakedown, get permission from the state to operate the facility and put it back online to try to deal with all of that backlog of influent you've stored in those tanks and operate again. Whereas if 051 is in the picture, you're not facing that deadline. But without 051, at the end of that four-month period, the research and development operations at this laboratory start to become impacted, because they are producing the low-level liquid radioactive waste that must go somewhere. And if those tanks are full, the mechanical evaporator is not yet fully repaired and permitted, and 051 is not available and certainly couldn't be permitted again in four months' time, there's a real impact on this laboratory. And that was all made clear in the renewal application, clear back in 2012, that the 051 is a just-in-case, very important just-in-case portion of this facility. And moreover, if the mission of the laboratory increases the need to treat more and more radioactive liquid waste, then even the mechanical evaporator and the solar evaporation tanks, once they come online sometime in the future, might not be sufficient. Faced with all of that, now petitioners have resorted to a novel interpretation of the statute, the Waterkeeper case, the Pork Producers' Council case, to say that until you have an actual discharge, or if you have not had one in a long period of time, EPA cannot issue a permit. I see I'm out of time, but I would close by saying that there is nothing in the statute and nothing in those cases that supports that proposition. Thank you, Ken. Thank you. You have some development? Just briefly, Your Honor. The statute limits Clean Water Act permit to discharges. There is no such thing as a just-in-case permit that's authorized by law. This facility is not under RCRA. It doesn't have a RCRA permit. The lab as a whole is regulated by the hazardous and solid waste amendments, which can be applied if there is a solid waste management unit to clean up. It doesn't regulate the operation of the facility. Regulation under the Atomic Energy Act is self-regulation, which has never been effective with DOE. The statements that counsel made about the status of the SET are entirely from me. There are certain materials not in the record. I can't concur with them. So far as I know, the lab is still pursuing a permit for those tanks. So they're available. Thank you, counsel. Thank you, Your Honor. That will conclude the argument in this case. I appreciate the arguments.